Missouri Pacific Transportation Company *v.* Shepherd.

4-6549                                     157 S. W. 2d 501

Opinion delivered December 22, 1941.

*Pryor & Pryor,* for appellant.

*Partain & Agee* and *Hardin & Barton,* for appellee.

Mehaffy, J.   The appellee, David Edgar Shepherd, on January 12, 1941, at about four or four-thirty a. m., took passage on the bus of appellant, Missouri Pacific Transportation Company, at Coal Hill, Arkansas, and paid his fare to Fort Smith, Arkansas.

It was alleged in the complaint that it was dark and there were no lights on the bus; that after the bus had reached Crawford county a heavy suitcase and bundle of newspapers, which were in a rack on the opposite side of the bus from appellee, fell out of the rack and onto appellee causing him to lose consciousness and injuring him severely; that the agent, servant and employee of the appellant carelessly and negligently permitted to remain in the overhead compartment, a certain large and heavy suitcase and a large and heavy bundle of papers; that he was injured seriously, made sick, made to lose time from his work, and that it was all caused by the negligence of appellant's servants in permitting said suit-

case and papers to fall on and injure appellee. He prayed damages against the appellant in the sum of $2,975.

Appellant answered denying each and every allegation in the complaint. There was a trial and verdict and judgment in favor of appellee in the sum of $1,250. Motion for new trial was filed and overruled, and the case is here on appeal.

It is first contended by the appellant that there was no actionable negligence proved and that appellee was not entitled to recover. Appellant seriously objects to instruction No. 2, given at the request of the appellee, which reads as follows:

"In this case if you find from a preponderance of the testimony that the plaintiff, David E. Shepherd, became a passenger upon a bus of the defendant, Missouri Pacific Transportation Company, and paid his fare as a passenger thereon, and you further find from a preponderance of the evidence that while the plaintiff was such passenger upon said bus a suitcase and bundle of newspapers was caused to fall out of a rack or compartment above where the plaintiff was riding and to strike and injure him while said bus was traveling upon the highway and you further find from a preponderance of the evidence that said suitcase and bundle of newspapers had been carelessly and negligently placed in said rack in a dangerous and unsafe manner, and if you further find from a preponderance of the evidence that the driver and operator of said bus knew of the dangerous and unsafe manner in which said suitcase and bundle of newspapers were placed, if they were so placed, or by the exercise of ordinary care on his part should have so known, or if you find from a preponderance of the evidence that at the time of the injuries, if any, to the plaintiff, the bus upon which he was riding was being operated by the driver thereof at a dangerous and unlawful rate of speed around a curve upon a highway, and you further find from a preponderance of the evidence that such acts, or either of them, if they existed, was negligence, and caused said objects to be thrown and to strike plaintiff, if such acts or either of them did so cause

same to be done, and you further find from a preponderance of the evidence that such actions or either of them, if same existed, upon the part of the defendant or its said employees was the proximate cause of plaintiff's injuries, if any, then your verdict should be for the plaintiff against the Missouri Pacific Transportation Company.''

It is argued by appellant that this instruction is wrong because there is no suggestion in the record that the driver of the bus had anything to do with placing these articles in this receptacle. Appellant cites and relies on the case of *Strickland* v. *Missouri Pacific Trans. Co.,* 195 Ark. 950, 115 S. W. 2d 830. The Strickland case was not a personal injury case, but was for the loss of baggage, and the trial court directed a verdict in favor of the Missouri Pacific Transportation Company. This court reversed the case and remanded it for new trial. It was said in that case: ''Under the law in this state, the carrier is bound to accept and carry the baggage of the passenger. It may check the baggage or it may permit the passenger to keep in his possession the handbaggage; but if it takes exclusive control and deprives the passenger of the custody of the baggage, it becomes liable for its loss. It is not required to check the handbaggage, but it is required to check it or permit the passenger to have custody and control of it.''

There was no question in the Strickland case like the one involved here. The driver of the bus, in this case, testified that he knew that there was more than one suitcase in the rack that night and that he knew there were bundles of papers in the rack. This suitcase and bundle of papers did not belong to the appellee and he knew nothing about them. The bus driver did know that they were there, but he testified that he did not do anything about them, except to go back and get a suitcase for a man at Alma. When asked whose duty it was to find out if the packages in the rack were properly secured he said that it was his duty; that he did not delegate that to any passenger. He said that one would ordinarily think that the straps were there to hold baggage, and if the straps were not in the right place, he would put them in the right

place. Witness does not know whether the suitcase that he delivered to the man at Alma was the one that had fallen. He does not remember whether he made an inspection between Coal Hill and Alma to see whether the suitcase and papers were secure in the rack. Witness also testified that the purpose of the rack was to put baggage in. When asked if it would fall if it were properly placed in the rack and the bus were properly operated, he answered that that was hardly a fair question. When told by appellant's attorney to answer the question, he said if it were properly put in the rack and the bus operated properly, it would not fall out.

Unquestionably the appellant had taken charge of this baggage, suitcase and bundle of newspapers, and had exclusive control of it, and it was its duty to exercise care to put the baggage in the rack safely. The court did not err in giving instruction No. 2.

It is not disputed that appellee took passage on appellant's bus at Coal Hill and paid the cash fare to Fort Smith; that he became a passenger and took a seat in the bus, and that a suitcase and bundle of papers fell from the baggage rack. Some of the witnesses say that they did not see it and did not know of it; but the undisputed facts show that the suitcase and bundle of papers fell. The driver of the bus, as we have already said, testified that they would not have fallen if they had been properly placed on the rack and the bus had been properly operated.

It would serve no useful purpose to set out the evidence in full, but there is ample evidence to show that appellee was a passenger, guilty of no negligence himself, and was injured by the suitcase and bundle of papers falling on him.

Appellant cites and relies on a number of authorities from other jurisdictions, but the law is well settled in this state as to the duty of a common carrier to its passengers.

This court has said: "Carriers are under a duty to use the highest degree of care which a prudent and cautious man would exercise and which is reasonably con-

sistent with the mode of conveyance and practical operation of the means of carriage.'' *Mo. Pac. Rd. Co.* v. *Smith,* 196 Ark. 405, 117 S. W. 2d 1068; *St. L., I. M. & S. Ry. Co.* v. *Purifoy,* 99 Ark. 366, 138 S. W. 631; *St. L., I. M. & So. Ry. Co.* v. *Plott,* 108 Ark. 292, 157 S. W. 385; *St. L. & S. F. Ry. Co.* v. *Dyer,* 115 Ark. 262, 170 S. W. 1013; *Dillahunty* v. *C., R. I. & P. Ry. Co.,* 119 Ark. 392, 178 S. W. 420; *Pittman* v. *Hines,* 144 Ark. 133, 221 S. W. 474; *Arkansas P. & L. Co.* v. *Mart,* 188 Ark. 202, 65 S. W. 2d 39; *Wade* v. *Brocato,* 192 Ark. 826, 95 S. W. 2d 94.

This court recently said: ''The court held that the instruction was more favorable than the appellant was entitled to; that the law imposes the highest degree of skill and care upon common carriers consistent with the practical operation of their cars to furnish their passengers a safe place to get on and off.'' *Mo. Pac. Trans. Co.* v. *Robinson,* 191 Ark. 428, 88 S. W. 2d 913; *Wade* v. *Brocato, supra.*

Under the evidence in this case there is no question about the liability of the carrier. However, a verdict was returned for $1,250, and it is insisted that this verdict is excessive.

The evidence as to the extent of appellee's injuries is conflicting. Percy Boatright, Jr., testified that he was on the bus when the suitcase fell out of the rack; was sitting on the right-hand side facing the front about three or four seats from the back; that when the suitcase fell from the rack it hit the back of the chair across the aisle; that he caught the suitcase and put it back up; so far as he knew, the suitcase did not strike anyone. He said he asked appellee if the suitcase hit him, and appellee said that it had not. Witness said that the suitcase was a small one made of pasteboard or leather, not metal; that when he picked it up it did not feel like it had much in it.

Henry Adams testified that he was on the bus, and so far as he knew nothing unusual happened; that he did not hear any outcry or anything unusual.

James R. Green, the bus driver, testified that the appellee said he was not hurt; that he saw him again that

night when he boarded the bus at 6:30 o'clock in Fort Smith, and he appeared as well as ever.

The doctors testified that his injuries were very slight, and appellee testified that he was severely injured.

It is our conclusion that the evidence in this case would sustain a verdict for $500. Therefore, if the appellee, within fifteen days, will enter a remittitur for $750, the judgment will be affirmed; otherwise it will be reversed and remanded for a new trial.